IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DANA WILSON,<br>     Plaintiff, | §<br>§<br>§ | |
| v. | § | Civil Action No. 3:15-CV-1166-M-BK |
| | § | |
| CAROLYN W. COLVIN,<br>     Defendant. | §<br>§<br>§ | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order 3*, the Court now considers *Plaintiff's Motion for Summary Judgment*, Doc. 20, and *Defendant's Motion for Summary Judgment*, Doc. 22.  For the reasons that follow, Plaintiff's motion should be **DENIED**, Defendant's motion should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

I.   **BACKGROUND**

   **A.  Procedural Background**

Plaintiff seeks judicial review of a final decision by the Commissioner denying her application for disability insurance benefits and supplemental security income under the Social Security Act ("The Act").  Plaintiff's March 19, 2012, application was twice denied. Doc. 15-6 at 2-10; Doc. 15-5 at 4-12.  On March 25, 2013, a hearing was held before an administrative law judge ("ALJ"), who subsequently issued an adverse decision. Doc. 15-3 at 69-96; Doc. 15-3 at 51-64.  The Appeals Council denied Plaintiff's request for review, Doc. 15-3 at 31-34, thus making the ALJ's decision the final decision of the Commissioner.  Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

### B. Factual Background

Plaintiff, who was 47 years old on her alleged disability onset date of August 1, 2011, Doc. 15-6 at 2, has a GED, Doc. 15-3 at 74, and primary work experience with insurance companies as a claims handler, marketer, customer service representative and manager. Doc. 15-3 at 75-76; Doc. 15-7 at 7.

*Plaintiff's Relevant Testimony*

At the March 23, 2013, hearing, Plaintiff testified that she suffered from severe fatigue and chronic pain diagnosed as fibromyalgia. Doc. 15-3 at 78-77. She also reported suffering from seizures and tremors. Doc. 15-3 at 82-83. Plaintiff testified that she was diagnosed with panic disorder, agoraphobia, and anxiety, Doc. 15-3 at 83-84. Plaintiff averred that she had been treated by a psychiatrist "most of [her] life until [she] lost insurance in mid '90s," Doc. 15-3 at 88-89, and subsequently went without seeing a therapist because her primary care physician would give her medication, including Celexa for her "wild extreme moods" and Buspar for her panic disorder. Doc. 15-3 at 83-84, 89. Although the Buspar helped "quite a bit," Plaintiff still experienced panic attacks when planning to leave home. Doc. 15-3 at 83-84; Doc. 15-3 at 88. Plaintiff also testified that she is frequently and uncontrollably rude to people, so she avoids socializing, and that she was once admitted into a psychiatric hospital when she was a teenager because she was suicidal. Doc. 15-3 at 88, 90.

*Relevant Medical Records*

From September 29, 2010, to December 19, 2012, during approximately 17 examinations at Mercy Medical Clinic, the examiners noted that Plaintiff was "alert and oriented to person, place, and time." Doc. 15-9 at 33, 39, 45; Doc. 15-10 at 18, 26, 34, 41, 48, 55; Doc. 15-11 at 34, 58; Doc. 15-12 at 5, 23, 29, 38, 43, 49; Doc. 15-13 at 5, 11, 17, 28, 34, 43. Examiners also

described Plaintiff as having a "normal mood and affect," "normal behavior," and normal "judgment and thought content." Doc. 15-10 at 18, 27, 34, 41, 48, 55-56; Doc. 15-11 at 34; Doc. 15-12 at 5, 23, 29, 38, 43, 49; Doc. 15-13 at 5, 11, 17, 28, 34. When seen on July 26, 2011, Plaintiff was "negative for suicidal ideas, hallucinations, behavioral problems, confusion, sleep disturbance, self-injury, dysphoric mood, decreased concentration and agitation," and she was "not nervous/anxious and not hyperactive." Doc. 15-10 at 33; Doc. 15-13 at 4.

On May 11, 2012, consulting expert Brad Williams, Ph.D., conducted a psychiatric review and opined that Plaintiff had a mild degree of limitation for activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, and that she had no episodes of decompensation. Doc. 15-11 at 11-23. Subsequently, on December 18, 2012, during an overnight stay at Mercy Hospital, it was noted that Plaintiff was not nervous or anxious and did not have any problems with depression. Doc. 15-13 at 40.

On February 12, 2013, Plaintiff was examined by Dr. Donald Brady, at HealthStar Neurology, for seizures, which she reported having daily since December 2012. Doc. 15-14 at 10. According to Dr. Brady, Plaintiff's description of these events and the video evidence of a "typical spell" presented by Plaintiff's "best friend" "does not provide evidence of" seizure activity. Doc. 15-14 at 12. Plaintiff reported that "over at least the past year, she has become easily extremely upset, and when she is so upset she demonstrates 'extreme personality change,'" and that she had "become afraid to leave the house. Doc. 15-14 at 10. She also reported crying spells, depression, anhedonia, sadness, and suicidal thoughts. Doc. 15-14 at 10.

Dr. Brady noted:

> I have not inserted myself into the diagnosis and treatment of prior established diagnosis of fibromyalgia today, but I suspect that there are more significant psychological issues than previously recognized, and symptoms of generalized

>anxiety and agoraphobia are rather prominent in her perception of her history and likely relevant to the presenting, episodic symptoms.

Doc. 15-14 at 12. He ordered a head MRI and an EEG. Doc 15-14 at 12. The results of both tests, conducted at Mercy Hospital on February 15, 2013, were "normal." Doc. 15-14 at 13-15. At her follow-up visit with Dr. Brady on March 21, 2013, Plaintiff again reported having "spells." Dr. Brady requested that Plaintiff be scheduled for a video EEG. Doc. 15-14 at 16-17. However, at the administrative hearing, Plaintiff testified that she had not yet scheduled the test because she lacked insurance. Doc. 15-3 at 82.

*Relevant ALJ's Findings*

In July 2013, the ALJ issued the decision unfavorable to Plaintiff. The ALJ concluded that Plaintiff had the severe impairments of Hashimoto's thyroiditis, fibromyalgia, syncope/pseudo seizures, obesity and anxiety/panic disorder, Doc. 15-3 at 56, but that she did not have an impairment or combination of impairments that met or equaled the criteria of a listed impairment, Doc. 15-3 at 57. The ALJ further found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work where she lifts and carries no more than 10 pounds, sits six hours out of eight hours, can do a considerable amount of walking, but no frequent bending, crouching, working at unprotected heights, operating moving or dangerous machinery, or driving a motor vehicle. Doc. 15-3 at 59. The work can be semi-skilled work where the interpersonal contact is routine but superficial, the complexity of the tasks is learned by experience, it involves severable variables, uses judgment within limits, and the supervision required is little for routine tasks, but detailed for non-routine tasks. Doc. 15-3 at 59. The ALJ found that while Plaintiff is unable to perform her past relevant work, there existed in significant numbers in the national, regional and state (Arkansas) economy jobs that she could perform,

such as insurance clerk, benefits clerk, and customer order clerk.  Doc. 15-3 at 62-63.  The ALJ thus concluded that Plaintiff was not disabled.  Doc. 15-3 at 64.

## II.   APPLICABLE LAW

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan* , 38 F.3d at 236.

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be

considered to determine if any other work can be performed.  *Wren v. Sullivan* , 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)–(f), 416.920 (b)–(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett* , 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform.  *Greenspan* , 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen* , 810 F.2d 1296, 1304 (5th Cir. 1987).

## III.  ANALYSIS

### A.  The ALJ's Mental RFC is Supported by Substantial Evidence

Relying on the holding of *Ripley v. Chater*, 67 F. 3d 552 (5th Cir. 1995),[1] Plaintiff argues that the ALJ's mental RFC is not supported by substantial evidence.  Doc. 21 at 16.  Plaintiff asserts that no examining or reviewing doctor expressed an opinion on the effects Plaintiff's mental impairments would have on her ability to work because at step two the state agency medical consultants determined that Plaintiff's mental impairments were not severe impairments. Doc. 21 at 17-18.  Plaintiff maintains that the Commissioner did not arrange a consultative examination to address Plaintiff's mental impairments, and the ALJ did not call a medical expert

---

[1] In *Ripley*, the ALJ concluded that the claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion.  *Ripley*, 67 F.3d at 557.  The appellate court noted that the record contained a vast amount of evidence establishing that the claimant had a back problem, but did not clearly establish what effect the condition had on his ability to work.  *Id.*  The court thus remanded with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work.  *Id.* at 557-58.

to testify and give a medical opinion on Plaintiff's ability to function, instead, the ALJ attempted to glean the effects of Plaintiff's mental impairment from the reports and treatment notes, overreaching his authority and exercising an expertise he does not possess.  Doc. 21 at 18.

Defendant responds that substantial evidence supports the ALJ's RFC assessment with respect to Plaintiff's mental limitations because although the record contains numerous treatment records and progress notes, including a history of anxiety/panic disorder, there is sparse evidence of any continued symptoms of anxiety/panic disorder, or diagnosis or treatment of such condition.  Doc. 22-1 at 6.

The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  RFC refers to the most that a claimant is able to do despite his physical and mental limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a).  The RFC is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether a claimant can work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Generally, in arriving at the RFC, an ALJ should request a medical source statement that describes the types of work a claimant can still perform.  *Ripley*, 67 F.3d at 557.  However, the absence of such a statement is not reversible error if the ALJ's decision is nevertheless supported by substantial evidence.  *Id.*  Moreover, reversal is warranted only if the claimant shows that he was prejudiced.  *Id.*

The ALJ's mental RFC was supported by substantial evidence.  Although Plaintiff continuously reported depression and anxiety at her medical visits, the record contains little or no objective evidence supporting the diagnosis, symptoms, or treatment of her claimed mental health conditions.  Moreover, Plaintiff testified that her medication relieved her alleged

symptoms to the degree that she no longer required or sought treatment from a mental health professional, depending instead on her primary care physician to manage the prescriptions. Doc. 15-3 at 83-84, 89. To be disabling, symptoms must be constant, unremitting, and wholly unresponsive to therapeutic treatment. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th. Cir. 2001). And as Plaintiff herself asserts, the reason there is no evidence supporting the ALJ's mental RFC is that two state agency medical consultants determined that Plaintiff's mental impairments were <u>not</u> severe impairments. That the ALJ gave Plaintiff the benefit of the doubt in concluding otherwise, cannot logically be the basis for Plaintiff's claim that the ALJ's mental RFC was not then supported by the evidence. In other words, there is no prejudice here where the medical evidence indicates no need for <u>any restriction</u> in Plaintiff's RFC, but the ALJ included restrictions nonetheless.

Finally, the medical evidence that Plaintiff submits for the first time with her brief in this case are of no moment. Doc. 21-1; Doc. 21-2. The documents post-date the ALJ's decision and indicate Plaintiff suffers from bipolar disorder, an impairment neither previously claimed nor diagnosed during the relevant period. Contrary to Plaintiff's argument, Doc. 21 at 21, such evidence which supported a subsequent disability finding, does not suggest that the ALJ erred in the earlier adverse ruling that is the subject of this lawsuit. As Plaintiff correctly asserts, such "evidence does not stand for the proposition that Wilson was disabled at the time the ALJ reviewed her claim." Doc. 21 at 21. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (a case will be remanded for consideration of new evidence if it relates to the time period for which benefits were denied and does not concern either a later-acquired disability or the subsequent deterioration of a previously non-disabling condition).

Thus, the Court concludes that there was sufficient evidence from which to conclude that Plaintiff was not disabled under the Act and, therefore, the ALJ's mental RFC was supported by substantial evidence.

## IV.  CONCLUSION

For the reasons stated above, *Plaintiff's Motion for Summary Judgment*, Doc. 20, should be **DENIED**, *Defendant's Motion for Summary Judgment*, Doc. 22, should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on July 12, 2016.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE